UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
LINDSAY D. COVEY, et al.,

                Plaintiffs,

    - against -

DIANA SIMONTON, et al.,

                Defendants.
-----------------------------------------------------X

**R E P O R T     A N D
RECOMMENDATION**

04 CV 3273 (NGG)

      On July 30, 2004, plaintiffs Lindsay D. Covey and Sandra E. Covey ("plaintiffs")

commenced this personal injury action against Diana Simonton, Charles E. Simonton (the

"Simonton defendants") and Nikolaos Pahountis ("Pahountis"), seeking damages for injuries

incurred during an automobile accident that occurred on May 9, 2004. By Notice of Motion

dated March 30, 2006, defendant Pahountis moved for summary judgment on the issue of

liability as to all claims and cross claims against him. Thereafter, on April 1, 2006, the plaintiffs

also moved for summary judgment against the Simonton defendants on the issue of liability. The

Simonton defendants then filed cross-motions for summary judgment against both defendant

Pahountis and the plaintiffs on April 3, 3006.

      By Order dated August 22, 2006, the various motions for summary judgment were

referred to the undersigned to prepare a Report and Recommendation.

## FACTUAL BACKGROUND

      On May 9, 2004, plaintiff Lindsay D. Covey, age 22, was a passenger, along with her 21-

year-old sister, Sandra E. Covey, in a car driven by Diana Simonton, and owned by Ms. Simonton's father, Charles E. Simonton. (Pls.' Stmnt ¶ 1; L. Covey Decl. ¶ 1; Defs.' Resp. ¶ 1).[1] In the course of driving from Bay Ridge, Brooklyn into Manhattan, the Simonton vehicle entered the Gowanus Expressway at the 86th Street entrance. (Pls.' Stmnt ¶¶ 4, 5; L. Covey Decl. ¶ 2; Defs.' Resp. ¶ 4). Plaintiffs allege that at the time, Ms. Simonton was speeding at least ten miles per hour faster than the fifty-mile-per-hour speed limit. (Pls.' Stmnt ¶¶ 3, 8; L. Covey Decl. ¶ 5). The Simonton defendants deny that Ms. Simonton was speeding. (Defs.' Resp. ¶¶ 3, 8).

According to Ms. Covey, the Simonton vehicle proceeded in the right-hand lane of traffic on the Gowanus Expressway despite the fact that a sign indicated that the right lane was only to be used by vehicles exiting at 65th Street. (Pls.' Stmnt ¶¶ 4, 5, 8; L. Covey Decl. ¶¶ 5, 6). The Simonton defendants deny that the entire right lane is designated "Exit Only" or that the lane is reserved for vehicles exiting at 65th Street. (Defs.' Resp. ¶¶ 5, 6). These defendants also deny that Ms. Simonton passed a sign reading "Exit Only" prior to the accident in question. (Id. ¶ 7).

Plaintiff Lindsay Covey claims that despite her request that Ms. Simonton slow down, the defendant continued to drive at an excessive rate of speed in the right lane until she encountered a mattress in the roadway. (Pls.' Stmnt ¶¶ 8-9; L. Covey Decl. ¶¶ 5-7). Instead of moving into the center lane to avoid the mattress, plaintiffs allege that Ms. Simonton veered onto the right shoulder and continued to travel some distance before striking the Pahountis vehicle, which was parked on the shoulder of the Expressway. (Pls.' Stmnt ¶¶ 9, 10; L. Covey Decl. ¶¶ 7, 9). The

---

[1]Citations to "Pls.' Stmnt" refer to the Plaintiffs' Local Civil Rule 56.1 Statement, dated April 1, 2006. Citations to "L. Covey Decl." refer to the Declaration of Lindsay Covey, dated April 1, 2006. Citations to "Defs.' Resp." refer to the Simonton defendants' Response to Plaintiffs' Local Rule 56.1 Statement, dated May 1, 2006.

Simonton defendants admit that the car drove onto the shoulder to avoid the mattress, and because traffic blocked the left lane, but deny that it traveled any great distance, contending instead that the mattress was less than two or three car lengths behind the Pahountis vehicle, almost alongside it. (Defs.' Resp. ¶ 3, 9). Defendant Pahountis contends that the Pahountis vehicle was approximately eighteen (18) car-lengths from the mattress at the time of the impact. (Pahountis Dep.[2] at 27). According to Ms. Covey, the area was well-lit, the lights and hazard lights on the Pahountis vehicle were illuminated,[3] and she could see the Pahountis vehicle from the moment Ms. Simonton drove onto the shoulder. (Pls.' Stmnt ¶¶ 12, 13; L. Covey Decl. ¶¶ 8, 9). The Simonton defendants deny that the area was well-lit and contend that not only were there no street lights in the area, but that the Pahountis vehicle's lights and hazard lights were not on. (Defs.' Resp. ¶¶ 12, 13).

## DISCUSSION

### A. Standards for Summary Judgment

It is well-settled that a party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Thompson v. Gjivoje,

---

[2]Citations to "Pahountis Dep." refer to the deposition of Nikolaos Pahountis, dated August 10, 2005 and attached as Exhibit L to the Simonton defendants' Motion for Summary Judgment ("Simontons' Mot.").

[3]Defendant Pahountis also asserts that he put his hazard lights on prior to the collision. (Pahountis Dep. at 31:2-10).

896 F.2d 716, 720 (2d Cir. 1990). Since summary judgment is an extreme remedy, cutting off the rights of the non-moving party to present a case to the jury, see Egelston v. State Univ. Coll. at Geneseo, 535 F.2d 752, 754 (2d Cir. 1976); Gibralter v. City of New York, 612 F. Supp. 125, 133–34 (E.D.N.Y. 1985) (stating that summary judgment "is a drastic remedy and should be applied sparingly"), the Court should not grant summary judgment unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him [or her] to relief." Egelston v. State Univ. Coll. at Geneseo, 535 F.2d at 754 (internal citations omitted); see also Auletta v. Tully, 576 F. Supp. 191, 194-95 (N.D.N.Y. 1983), aff'd, 732 F.2d 142 (2d Cir. 1984) (stating that summary judgment should be granted only if "it is clear that the requirements of Fed. R. Civ. P. 56 have been satisfied"). In addition, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Ford v. Reynolds, 316 F.3d at 354 (stating that "[i]n determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant") (citing Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002)).

Once the moving party discharges its burden of proof under Rule 56(c), the party opposing summary judgment "has the burden of coming forward with 'specific facts showing that there is a genuine issue for trial.'" Phillips v. Kidder, Peabody & Co., 782 F. Supp. 854, 858 (S.D.N.Y. 1991) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials

of his pleading." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256. Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247–48 (emphasis in original). Rather, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.

In a negligence case such as this, summary judgment is "'highly unusual' . . . because such a case requires a determination of the reasonableness of a party's conduct, and 'the assessment of reasonableness generally is a factual question to be addressed by the jury.'" Maizous v. Garraffa, No. 00 CV 4895, 2002 WL 1471556, at *3 (E.D.N.Y. April 30, 2002) (citing cases and quoting King v. Crossland Sav. Bank, 111 F.3d 251, 259 (2d Cir. 1997)).


B. The Various Motions

Plaintiffs move for summary judgment against the Simonton defendants, arguing that because the Simonton vehicle struck the parked Pahountis vehicle in the rear, the law presumes that the Simonton vehicle is responsible for the accident. (Pls.' Mem.[4] at 2-3). The Simonton defendants argue that summary judgment should be granted in their favor because Ms. Simonton acted reasonably to avoid the mattress lying in the highway and as such, this was a "qualifying emergency" that relieves the Simonton defendants of responsibility. (Simontons' Mem.[5] at 6-9).

---

[4]Citations to "Pls.' Mem." refer to Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment, dated April 1, 2006.

[5]Citations to "Simontons' Mem." refer to the Memorandum of Law in Support of Defendants Diana Simonton and Charles E. Simonton's Motion for Summary Judgment, dated April 3, 2006.

In addition, the Simonton defendants challenge Sandra Covey's claim that she was out of work for the minimum number of days necessary during the relevant time period, and accordingly, they argue that she has not met the serious injury threshold. (Id. at 9-17). Nikolaos Pahountis moves for summary judgment on the grounds that there are no triable issues of fact on the issue of defendant Pahountis' liability to the Simonton defendants because it is undisputed that Mr. Pahountis was stopped on the shoulder of the road at the time that he was rear-ended by Ms. Simonton, which he contends creates a presumption that the Simonton defendants are liable for the accident. (Pahountis Aff.[6] at 5-8).

## C) Lindsay Covey's Deposition and Declaration

As an initial matter, the Simonton defendants have urged the Court to disregard Lindsay Covey's declaration in its entirety because they argue that it sets forth "feigned issues of fact," designed to overcome the motion for summary judgment against her. (See Simontons' Mem. in Opp. to Pahountis[7] at 3-7 (citing United National Ins. Co., 988 F.2d 351, 354 (2d Cir. 1993); Trans-Orient Marine Corp. v. Star Trading and Marine, Inc., 925 F.2d 566, 572 (2d Cir. 1991)).

It is well settled that "a party's affidavit which contradicts his [or her] own prior deposition testimony should be disregarded on a motion for summary judgment." Mack v. United States, 814 F.2d 120, 124 (2d Cir. 1987) (citing cases); see also Marino v. Reina, No. 04

---

[6]Citations to "Pahountis Aff." refer to the Affirmation of Steven J. Weissler, submitted in Support of defendant Pahountis' motion for summary judgment, dated March 30, 2006.

[7]Citations to "Simontons' Mem. in Opp. to Pahountis" refer to the Simonton defendants' Memorandum of Law in Opposition to Defendant Pahountis' Motion for Summary Judgment, dated May 1, 2006.

CV 1674, 2007 WL 632373, at *3 (E.D.N.Y. Feb. 27, 2007). However, "a material issue of fact may be revealed by . . . subsequent sworn testimony that amplifies or explains, but does not merely contradict . . . prior testimony . . . especially where the party was not previously asked sufficiently precise questions to elicit the amplification or explanation." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996); see also White v. ABCO Engineering Corp., 221 F.3d 293, 304 (2d Cir. 2000) (noting that "[a]lthough it is generally accepted that a later affidavit may not supersede a prior deposition, that rule only applies when the deposition and affidavit conflict"). Accordingly, in considering the Simonton defendants' request that Lindsay Covey's declaration be disregarded, the Court must determine if her deposition testimony and her declaration actually conflict.

The Simonton defendants point to Lindsay Covey's deposition of January 28, 2005 ("L. Covey Dep."),[8] in which she states that the Pahountis vehicle was "[o]n the side of the road. Next to the mattress." (L. Covey Dep. at 38:17-23). The Simonton defendants contend that this testimony is inconsistent with the assertion that Lindsay Covey made in her declaration, in which she claimed that after striking the mattress, Ms. Simonton "rode the shoulder for at least 2 city blocks." (L. Covey Decl. ¶ 7). In addition to the difference between her statements about how far the Simonton vehicle traveled while on the shoulder of the expressway, the Simonton defendants also point out that in her deposition, Lindsay Covey claimed that she did not know the speed that the car was traveling at when it touched the mattress. However, in her declaration she stated that Ms. Simonton was traveling in excess of the speed limit. (Compare L. Covey Decl. ¶

---

[8]Lindsay Covey's declaration is attached to the Simonton defendants' Motion for Summary Judgment as Exhibit J.

7

5 <u>with</u> L. Covey Dep. at 37-38). They further note that in her deposition testimony, Lindsay Covey stated that "directly before" the accident she warned Ms. Simonton by saying only "heads up on that blue thing," but that in her declaration, Lindsay Covey asserted that after they entered the Expressway, she told Ms. Simonton to "slow down." (<u>Compare</u> L. Covey Dep. at 33-34 <u>with</u> L. Covey Decl. ¶ 6). The Simonton defendants finally point to an alleged conflict between Lindsay Covey's deposition testimony that she did not see the Pahountis vehicle until the Simonton vehicle was only "six inches" away from it, while in her declaration, she states that she "could see the Pahountis vehicle from the moment that Diana [Simonton] entered the shoulder. . ." (<u>Compare</u> L. Covey Dep. at 41:7-9 <u>with</u> L. Covey Decl. ¶ 9).

In reviewing Lindsay Covey's deposition transcript and declaration, the Court notes that in her deposition testimony about the speed of the car, Ms. Covey testified as to its speed when she first saw the mattress and when the car touched the mattress; by contrast, in her declaration Ms. Covey testified about the speed of the vehicle <u>before</u> she saw the mattress. (<u>Compare</u> L. Covey Dep. at 33-34 <u>with</u> L. Covey Decl. ¶ 6). Similarly, the deposition testimony about statements made to Ms. Simonton prior to the accident appear to have been limited to Lindsay Covey's words immediately after seeing the mattress, while in her declaration, she claims that she told Ms. Simonton to "slow down" some time before she saw the mattress. (<u>Compare</u> L. Covey Dep. at 37-38 <u>with</u> L. Covey Decl. ¶ 5). Accordingly, the Court does not find that these statements are in direct conflict such that these portions of her declaration should be disregarded.

Lindsay Covey's differing accounts of where the Pahountis vehicle was located are, however, in direct conflict. Her deposition testimony is clear:

Q. Did the [Simonton] car continue traveling after it hit the mattress or did it stop or

something else?

A. It stopped right after, 'cause that's when we hit the [Pahountis] car.

Q. Where was this other car?

A. On the side of the road, next to the mattress

(L. Covey Dep. at 38:17-23). Her declaration is also unambiguous. In her declaration, Ms. Covey stated that Ms. Simonton drove on the shoulder "for at least 2 city blocks before hitting a car." (L. Covey Decl. ¶ 7). Accordingly, the Court has disregarded that portion of Ms. Covey's declaration that claims that the car traveled for two blocks before striking the Pahountis vehicle.[9]

The Court notes, however, that there is additional testimony from other witnesses that there was some significant distance between the Pahountis vehicle and the mattress. Among other things, Mr. Pahountis testified in his deposition that he moved his car "far way" from the mattress, a distance that he estimated to be "eighteen car [lengths] . . . as far as the shoulder goes." (Pahountis Dep. at 27). This testimony is further supported by the deposition testimony of the passenger in Mr. Pahountis' car, Mr. Nikolaos Matsangos, who stated that after striking the mattress, Mr. Pahountis turned onto the shoulder and "continued and then at some point stopped . . .[i]t could have been 15, 20, 30 meters." (Matsangos Dep.[10] at 25). Accordingly, even without Lindsay Covey's declaration on this point, an issue of material fact remains as to the location of the Pahountis car after it struck the mattress and stopped.

Accordingly, although the Court has not considered that portion of paragraph 7 of

---

[9]Indeed, Lindsay Covey's claim that she saw the Pahountis vehicle "immediately" after the Simonton vehicle entered the shoulder (L. Covey Decl. ¶ 9) can only be reconciled with her claim that she first saw the Pahountis vehicle when she was "six inches" away from it if indeed the Pahountis vehicle was struck immediately after the Simonton vehicle entered the shoulder.

[10]Citations to "Matsangos Dep." refer to the deposition of Nikolaos Matsangos, taken on September 22, 2005, and attached to the Pahountis Motion as Exhibit E.

Lindsay Covey's declaration that asserts that the Simonton vehicle traveled for two blocks after entering the shoulder because it is in conflict with her earlier deposition, the Court declines to find that Lindsay Covey is attempting to assert "feigned issues of fact" on any other matters, and declines to disregard the remainder of her declaration.

## D. Plaintiffs' Motion and the Cross Motion for Summary Judgment as to the Simontons

Plaintiffs contend that summary judgment on the issue of the Simonton defendants' liability should be granted because Diana Simonton struck a parked vehicle in the rear. (Pls.' Mem. at 2-3). The Simonton defendants counter that summary judgment should be entered in their favor because Ms. Simonton's actions were reasonable given the sudden emergency that she was presented with. (Simontons' Mem. at 6-9).

Where the jurisdiction of the district court rests on the diversity of the parties, as here, the law of the state in which the accident occurred is applied. See Erie R. R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Momchilov v. Chaduhry, No. 04 CV 3159, 2006 WL 1307978, at *2 (E.D.N.Y. May 11, 2006) (applying New York law in a diversity case for a negligence claim related to the rear-ending of a car). In order to prevail on a negligence claim under New York law, the plaintiffs must establish three elements: (1) that defendant owed plaintiff a duty of care; (2) that defendant breached that duty; and (3) that the breach was the proximate cause of plaintiffs' injury. See Lerner v. Fleet Bank, N.A., 459 F.3d 273, 286 (2d Cir. 2006) (quoting Solomon v. City of New York, 66 N.Y.2d 1026, 1027, 489 N.E.2d 1294, 499 N.Y.S.2d 392 (1985)); see also Johnson v. Bryco Arms, 304 F. Supp. 2d 383, 394 (E.D.N.Y. 2004). Under New York law, a prima facie case of negligence on the part of the driver of the moving vehicle is

10

established when there is a rear-end collision with a parked vehicle. DeJesus v. Rafael, No. 00 CV 5137, 2002 WL 31925501, at *1 (S.D.N.Y. Dec. 31, 2002) (citing cases); see also Filippazzo v. Santiago, 277 A.D.2d 419, 420, 716 N.Y.S.2d 710 (2d Dep't 2000) (holding that a "rear-end collision with a stopped or stopping vehicle creates a prima facie case of liability with respect to the operation of the rear most vehicle"); Mascitti v. Greene, 250 A.D.2d 821, 673 N.Y.S.2d 206 (2d Dep't 1998).

A prima facie case of liability established in this manner imposes a duty on the driver of the moving vehicle to provide a non-negligent explanation of the collision in order to overcome the inference of negligence and defeat the motion for summary judgment. See, e.g., Momchilov v. Chaduhry, 2006 WL 1307978, at *2; DeJesus v. Rafael, 2002 WL 31925501, at *2; Riley v. County of Broome, 256 A.D.2d 899, 681 N.Y.S.2d 851, 852 (3d Dep't 1999). Non-negligent explanations have been held to include unavoidable skidding on wet or icy pavement, mechanical failure, or the sudden stop of the vehicle ahead. See Momichilov v. Chaduhry, 2006 WL 1307978, at *2 (citing cases). However, drivers are expected to take into account weather and road conditions and drive at a safe speed to avoid collisions. DeJesus v. Rafael, 2002 WL 31925501, at *3 (citing Mitchell v. Gonzalez, 269 A.D.2d 250, 251, 703 N.Y.S.2d 124, 126 (1st Dep't 2000)).

Plaintiffs contend that the evidence is undisputed that the Simonton vehicle struck the Pahountis vehicle in the rear. (Pls.' Mem. at 2-3). It thus becomes the Simonton defendants' burden to rebut the presumption of negligence that arises when a parked vehicle is hit in the rear. Plaintiffs argue that the Simonton defendants cannot rebut the presumption because the evidence shows that Diana Simonton was traveling at an excessive rate of speed, failed to keep a proper

lookout, and failed to use reasonable care to avoid the accident by traveling in an exit-only lane and then continuing to drive on the shoulder. (Id.) Acknowledging that there is a dispute as to the ambient lighting conditions and whether the lights on the Pahountis vehicle were on, plaintiffs argue that it was Ms. Simonton's responsibility to adjust her speed to take into account the poor visibility and her failure to do so does not alleviate her responsibility for the rear-end collision. See DeJesus v. Rafael, 2002 WL 31925501, at *3.

Under New York's Vehicle and Traffic Law, it is the duty of all drivers "to operate their vehicles with reasonable care taking into account the actual and potential dangers existing from weather, road, traffic and other conditions." Goldstein v. United States, 9 F. Supp. 2d 175, 186 (E.D.N.Y. 1998) (citing Bradt v. Lancaster, 249 A.D.2d 663, 663-64, 671 N.Y.S.2d 199, 200 (3d Dep't 1998); Terrell v. Kissel, 116 A.D.2d 637, 638-39, 497 N.Y.S.2d 716, 718 (2d Dep't 1986)); see also Guzzardi v. Grotas, 98 A.D.2d 761, 469 N.Y.S.2d 475, 476 (2d Dep't 1983). All drivers are under a duty: (1) to maintain a reasonably safe rate of speed, (2) to have their automobiles under reasonable control, (3) to keep a proper lookout, under the circumstances then existing, to see and be aware of what was in their view, and (4) to use reasonable care to avoid an accident. See Filippazzo v. Santiago, 277 A.D.2d 419, 419-20, 716 N.Y.S.2d 710 (2d Dep't 2000); Coutrier v. Haraden Motorcar Corp., 237 A.D.2d 774, 776, 655 N.Y.S.2d 660, 663 (3d Dep't 1997); Sarosy v. Scheina, 225 A.D.2d 493, 494, 639 N.Y.S.2d 817 (1st Dep't 1996); see also Barile v. Lazzarini, 222 A.D.2d 635, 637, 635 N.Y.S.2d 694, 696 (2d Dep't 1995); Abramowicz v. Roberto, 220 A.D.2d 374, 375, 631 N.Y.S.2d 442, 443 (2d Dep't 1995); Guzzardi v. Grotas, 98 A.D.2d at 761, 469 N.Y.S.2d at 475.

If, as plaintiffs allege, they can establish that Ms. Simonton was not maintaining a

reasonably safe rate of speed, did not keep a proper lookout that would have taken into account the lighting conditions at the time, or did not use reasonable care to avoid the accident, then it will be difficult for the Simonton defendants to defeat liability. However, the Simonton defendants contend that plaintiffs have misstated critical facts regarding a number of material issues. (See generally Simontons' Mem.; Defs.' Resp.). Specifically, defendants dispute plaintiffs' claims regarding the speed of the Simonton vehicle (see Defs.' Resp. ¶ 3); when Ms. Covey first saw the mattress (Simonton Opp. Mem.[11] at 6); whether Ms. Covey ever remarked on the speed at which the car was traveling (id. at 5); the distance the car traveled before hitting the Pahountis vehicle (id. at 5-6); and whether the Simonton car was driving in a lane designated only for exit purposes. (Id. at 7). The Simonton defendants argue that the "Exit Only" sign was merely designed to be cautionary, warning drivers that the lane leads to the 65th Street exit. (Id. at 8). The Simonton defendants contend that it was not impermissible for Ms. Simonton to drive in that lane, as evidenced by the dotted white line that permits drivers to move in and out of the lane. (Id.)

More importantly, the Simonton defendants contend that Ms. Simonton's presence in the right lane was not the proximate cause of the accident. (Id. at 8-9). Instead, defendants argue that it was the "unanticipated presence of the mattress on the roadway, combined with defendant Pahountis' actions in turning off his lights and blocking the only way around the mattress, that were the proximate causes of plaintiffs' accident." (Id. at 9). Thus, in cross-moving for summary judgment on the issue of liability, the Simonton defendants argue that under the

---

[11]Citations to "Simonton Opp. Mem." refer to defendant Simontons' Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment, signed May 1, 2006.

"emergency doctrine," Ms. Simonton's actions were reasonable and prudent under the circumstances and she therefore should not be held liable for negligence.

Under New York law, when an individual is confronted by a sudden emergency that he or she has not caused, that person is not held to the same accuracy of judgment or degree of care that would be required under ordinary circumstances. See Rivera v. New York City Transit Authority, 77 N.Y.2d 322, 327, 569 N.E.2d 432, 567 N.Y.S.2d 629 (1991) (discussing the emergency doctrine and noting that "[t]his doctrine recognizes that when an actor is faced with a sudden and unexpected circumstance which leaves little or no time for thought, deliberation or consideration, or causes the actor to be reasonably so disturbed that the actor must make a speedy decision without weighing alternative courses of conduct, the actor may not be negligent if the actions taken are reasonable and prudent in the emergency context"). This emergency doctrine has been recognized by the New York Court of Appeals to apply in cases involving motor vehicle accidents. See Caristo v. Sanzone, 96 N.Y.2d 172, 750 N.E.2d 36, 726 N.Y.S.2d 334 (2001). The trial judge is first required to make a "threshold determination that there is some reasonable view of the evidence supporting the occurrence of a 'qualifying emergency.'" Id. (quoting Rivera v. New York City Transit Authority, 77 N.Y.2d at 327, 569 N.E.2d at 432, 567 N.Y.S.2d 629). If the evidence could support a finding of a "qualifying emergency," then the jury is tasked with determining (1) if the actor was faced with sudden, unforseen emergency not of the actor's doing and (2) whether the response was that of a reasonably prudent person. Id.

Here, the presence of the mattress in the roadway satisfies the threshold for the Court to determine that a jury considering the evidence may find a "qualifying emergency." However, based on the numerous disputed issues of fact regarding the speed of the Simonton vehicle, the

distance between the mattress and the Pahountis vehicle, and the lighting conditions at the time, the reasonableness of Ms. Simonton's action in response to the emergency presented by the mattress in the road is an issue that cannot be decided on summary judgment. If the jury were to conclude that Ms. Simonton was speeding, was not properly driving in the exit lane at the time, had adequate room to stop after swerving to avoid the mattress, should have seen Mr. Pahountis' car on the shoulder, or acted unreasonably in pulling over to the shoulder to avoid the mattress, then she may not be able to avoid a finding of liability to plaintiffs based on the rear-end collision with the Pahountis vehicle. Alternately, a jury could determine that Ms. Simonton was traveling at the legal speed limit, and that her response to the qualifying emergency was reasonable given the circumstances.

It is accordingly respectfully recommended that both plaintiffs' motion for summary judgment, and the Simonton defendants' cross motion for summary judgment as to liability be denied.


E. <u>Pahountis Motion for Summary Judgment</u>

Defendant Nicholas Pahountis moves for summary judgment seeking to dismiss the Simontons' cross-claims against him on the issue of his liability for the accident.


1) <u>Non-Compliance with Local Rule 56.1</u>

As an initial matter, the Simonton defendants noted in their Response to Defendant Pahountis' Local Rule 56.1 Statement, dated May 1, 2006 ("Simonton Resp.") that defendant Pahountis failed to properly file a Local Rule 56.1 Statement of Undisputed Facts with numbered

paragraphs, thereby making it impossible for them to properly assert a line by line response. (See Simonton Resp. at 1). The Court additionally notes that defendant Pahountis never filed a Local Rule 56.1 Response to the statements of plaintiffs and the Simonton defendants.

Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried. See Local Rule 56.1(a); see also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001). The Rule further requires that the statement of undisputed facts contain citations to admissible evidence supporting each asserted material fact. Local Rule 56.1(d); see Giannullo v. City of New York, 322 F.3d at 143 (reversing the district court's grant of summary judgment because there was insufficient evidence in the record to support certain critical assertions in the moving party's statement of material facts); see also Watt v. New York Botanical Garden, No. 98 CV 1095, 2000 WL 193626, at *1 n.1 (S.D.N.Y. Feb. 16, 2000).

The party opposing a motion for summary judgment is also required to submit a counter-statement controverting the moving party's statement of material facts, indicating which facts are in dispute that would require a trial. Local Rule 56.1(b). Under the Local Rule, "[i]f the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." Giannullo v. City of New York, 322 F.3d at 140 (citing Local Rule 56.1(c)). Where the party opposing a motion for summary judgment fails to submit a proper counter-statement of material facts, controverting the moving party's statement,

courts have deemed the moving party's statement of facts to be admitted and have granted summary judgment in favor of the moving party on the basis of the uncontroverted facts. See, e.g., Millus v. D'Angelo, 224 F.3d 137, 138 (2d Cir. 2000) (affirming grant of summary judgment based on plaintiff's failure to submit a statement pursuant to Rule 56.1); Sawyer v. Wight, 196 F. Supp. 2d 220, 225 (E.D.N.Y. 2002) (noting that "[t]he Second Circuit permits District Courts to grant summary judgment to moving parties on the basis of their uncontroverted 56.1 Statements").

In the instant case, defendant Pahountis failed to file a Rule 56.1 Statement of Material Facts in support of his motion for summary judgment. That failure alone would justify denial of Pahountis' motion for summary judgment. Local Rule 56.1(a); see also MSF Holding Ltd. v. Fiduciary Trust Co., Inter., 435 F. Supp. 2d 285, 304-05 (S.D.N.Y. 2006) (denying defendant's motion for summary judgment for failure to submit a 56.1 statement); Searight v. Doherty Enterprises, Inc., No. 02 CV 0604, 2005 WL 2413590, at *1 (E.D.N.Y. Sept. 29, 2005) (denying motion for summary judgment for failure to submit a 56.1 statement). Moreover, defendant Pahountis also failed to file a proper response to the Rule 56.1 Statement filed by the other parties. Thus, the Court could choose to accept the factual allegations of the Simonton defendants as uncontroverted. See Millus v. D'Angelo, 224 F.3d at 138.

However, district courts are given "broad discretion to determine whether to overlook a party's failure to comply with local court rules." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001); Healthfirst, Inc. v. Medco Health Solutions, Inc., No. 03 CV 5164, 2006 WL 3711567, *5 (S.D.N.Y. Dec. 15, 2006). Where parties fail to file Rule 56.1 statements of fact, the court may choose to accept all factual allegations of the opposing parties as true for the

purposes of deciding the motion for summary judgment, or may alternately "opt to conduct an assiduous review of the record." Id. (internal quotations and citations omitted); see also Sawyer v. Wight, 196 F. Supp. 2d at 225 (noting that where Rule 56.1 has not been properly followed, courts "may discretionarily choose to search the record of their own accord") (citations omitted).

In this case, counsel for defendant Pahountis submitted an affirmation and exhibits in support of his motion for summary judgment. His papers provide clear reference to the record, which the Court has thoroughly reviewed. Given the numerous factual disputes that have arisen in this case, as reflected in the papers of the other parties, the Court declines to accept the factual assertions of the Simontons as uncontroverted and considers defendant Pahountis' submissions on this motion for summary judgment despite his failure to strictly comply with Local Rule 56.1.

### 2) Pahountis Motion

In moving for summary judgment on the issue of liability, defendant Pahountis argues that at the time of the accident, he was parked on the shoulder of the Expressway because he too had been frightened by the same mattress in the roadway and had pulled over to the side after striking the mattress. (Pahountis Aff. at 3; Ex. E at 18-22). He claims that he was only parked for "about a minute," not blocking any portion of the highway and not in any of the lanes when the car was struck from behind by the Simonton vehicle. (Id.; Ex. E at 22) Defendant Pahountis argues that summary judgment is appropriate in this case because the accident involved a rear-end collision. (Id. at 5-7).

In the Simonton defendants' response, they argue that Pahountis violated Vehicle and Traffic Law § 1202(a)(1) which provides:

18

> Except when necessary to avoid conflict with other
> traffic, or when in compliance with law or the
> directions of a police officer or official traffic-
> control device, no person shall stop, stand or park a
> vehicle . . . alongside or opposite any . . .
> obstruction when stopping, standing or parking
> would obstruct traffic.

The Simonton defendants argue that the testimony of Lindsay Covey,[12] Diana Simonton and non-party witness Luis Viera "clearly establish[es] that the Pahountis vehicle came to stop alongside the mattress," in violation of Section 1202(a)(1). (Simontons' Mem. in Opp. to Pahountis at 3; Simonton Resp. ¶ 3). The Simonton defendants contend that when Pahountis stopped next to the mattress, he blocked Diana Simonton's only escape route (Simontons' Mem. in Opp. to Pahountis; Simonton Resp. ¶ 3), because there was traffic in the lane to Ms. Simonton's left. (Simontons' Mem. at 7).

The Simonton defendants further argue that by stopping on the shoulder, Pahountis also violated New York City Traffic Rules and Regulations that prohibit "stopping, parking or operating a motor vehicle" on the shoulder adjacent to a highway "except for emergency purposes." 34 RCNY § 4-08(a)(5). The Simonton defendants cite the case of Eltahan v. Rejoues, 7 A.D.3d 660, 776 N.Y.S.2d 833 (2d Dep't 2004), where the defendant had been sideswiped and stopped on the median of the highway, obstructing two lanes of moving traffic. In that case, the defendant's motion for summary judgment was denied on the grounds that to avoid liability, defendant would have to establish that his vehicle was disabled or that he was otherwise unable to move it before he was struck from the rear. Eltahan v. Rejoues, 7 A.D.3d

---

[12]Lindsay Covey's deposition conflicts with her declaration on the matter of where the Pahountis vehicle was in relation to the mattress, as discussed infra at 6-10.

660, 776 N.Y.S.2d 833.

Unlike that case, however, defendant Pahountis had pulled onto the shoulder after hitting the mattress - - the same emergency situation that confronted Ms. Simonton and on which she attempts to avoid liability. (Pls.' Stmnt ¶¶ 11; Ex. 1). Moreover, again unlike the Eltahan case, there is no evidence to suggest that defendant Pahountis was obstructing traffic; rather, he was pulled over completely on the shoulder. (Id.) While there is no dispute that defendant Pahountis' vehicle was parked on the shoulder of the road at the time of the accident and that his vehicle was struck in the rear, material issues of fact remain as to whether Pahountis acted negligently in stopping his vehicle where he did on the shoulder. Among other issues, there remains a dispute as to whether Pahountis pulled over directly next to the mattress as witness Luis Viera asserts (Simontons' Mot.,[13] Ex. Q; Defs.' Resp. ¶ 9), or whether, as he claims, he was eighteen (18) car-lengths away. (Pahountis Dep. at 27). Factual disputes also exist as to whether Pahountis remained stopped for one minute or three minutes (compare Pls.' Stmnt; Ex. 1 with Pahountis Aff.; Ex. E), if he kept his lights on or not (compare Pls.' Stmnt ¶ 13 with Simontons' Mem. at 3), and if he put his hazard lights on. (Compare Simontons' Mem. at 3 with Pls.' Stmnt ¶ 13; Pahountis Dep. at 31:2-10).

Given the numerous factual disputes that require an assessment of the credibility of various witnesses, a jury could find that Mr. Pahountis acted unreasonably when he pulled onto the shoulder of the highway, or that he stopped unreasonably close to the mattress, and remained in this position for an unreasonable length of time, thereby blocking one possible avenue for

---

[13]Citations to "Simontons' Mot." refer to the Simonton's Motion for Summary Judgment, submitted on April 3, 2006, and exhibits thereto.

avoiding the obstacle. See Hartung v. Lindsley, 13 A.D.3d 582, 583, 786 N.Y.S.2d 334 (2d Dep't 2004) (finding "issues of fact as to whether [parties] were negligent in stopping their operable vehicles in the traffic lane or shoulder of the highway" following a minor traffic accident). Similarly, a jury could credit Diana Simonton's testimony and that of the non-party witness, and find that Pahountis acted unreasonably by stopping on an unlighted section of the shoulder without illuminating his lights and hazard lights. See Gerse v. Neyjovich, 9 A.D.3d 384, 385, 780 N.Y.S.2d 615, 616 (2d Dep't 2004) (finding a triable issue of fact as to whether a car stopped in a left lane was negligent in not using hazard lights in violation of Vehicle and Traffic Law § 1163(e)); Riley v. County of Broome, 256 A.D.2d 899, 681 N.Y.S.2d 851 (finding that there was a triable issue of fact as to the liability of a defendant who rear-ended a street cleaner where a cloud of dust from the street cleaner may have obscured any lights or flashers); Rebhan v. City of New York, 122 A.D.2d 31, 32, 504 N.Y.S.2d 471, 472 (2d Dep't 1986) (upholding jury verdict in a rear end collision where the jury allocated partial liability to the driver of the forward car that was either stationary or moving very slowly but with its lights off).

Accordingly, because there are genuine issues of material fact in dispute as to defendant Pahountis' negligence, it is respectfully recommended that defendant Pahountis' motion for summary judgment be denied.


F. The Simonton Defendants' Threshold Motion

The Simonton defendants move for summary judgment seeking to dismiss the claims of Sandra Covey on the grounds that she has failed to satisfy the "serious injury" threshold.

(Simontons' Reply Mem.[14] at 3-7).

1) <u>Serious Injury</u>

Under Section 5104 of New York's "no-fault law," a plaintiff may not recover for non-economic losses such as pain and suffering unless she can prove that she suffered an injury caused by defendant that resulted in:

> death; dismemberment, significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a nonpermanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d). <u>See Rogers v. McLamb</u>, No. 04 CV 7043, 2006 WL 2734228, at *3 (S.D.N.Y. Sept. 22, 2006); <u>see also Yanez v. City of N.Y.</u>, 29 F. Supp. 2d 100, 112-113 (E.D.N.Y. 1998). An injured party who suffers "minor" injuries that do not fall within one of these categories has no right to recover for pain and suffering, <u>see Yanez v. City of N.Y.</u>, 29 F. Supp. 2d at 113; <u>see also Liberty Mutual Ins. Co. v. United States</u>, 490 F. Supp. 328 (E.D.N.Y. 1980), and New York courts have held that the no-fault statute is to "be strictly construed." <u>Liberty Mutual Ins. Co. v. United States</u>, 490 F. Supp. at 330 (citing cases); <u>Ratner v. American Heritage Relocation</u>, No. 97 CV 1649, 2000 WL 1028679, at *4 (S.D.N.Y. July 26, 2000) (citing

---

[14]Citations to "Simontons' Reply Mem." refer to the Memorandum of Law in Support of Defendants Diana Simonton and Charles E. Simonton's Declaration in Reply, dated May 10, 2006.

cases); see also Stossel v. Fleyshmahker, 117 Misc.2d 454, 455, 458 N.Y.S.2d 484, 485 (Kings

Co. 1983). On a motion for summary judgment, it is the defendant's burden to put forth

sufficient proof that the plaintiff did not suffer a serious injury as defined by the statute. See

Yanez v. City of N.Y., 29 F. Supp. 2d at 113; see also Rogers v. McLamb, 2006 WL 2734228, at

*3 (citing Gaddy v. Eyler, 79 N.Y.2d 955, 956, 591 N.E.2d 1176, 1177, 582 N.Y.S.2d 990, 991

(1992)).

Considering these principles and the supporting documentation presented in connection

with this motion, this Court concludes that plaintiff Sandra Covey has not suffered a "serious

injury" as defined by New York's no-fault law, and therefore cannot recover for pain and

suffering.


2) Application

Plaintiff Sandra Covey alleges that as a result of this accident, she suffered an injury that

rendered her unable to perform her usual and customary activities for at least 90 out of the first

180 days following the accident (the "90-180 Day Rule").[15] (Pls.' Opp. Mem.[16] at 4). Plaintiff

contends that she has submitted sufficient evidence to sustain her burden of showing that: "'(a)

there was a medically determined injury; (b) the impairment prevented [her] from performing

substantially all of the material acts of [her] customary daily activities; and (c) the incapacity

lasted for at least 90 out of the first 180 days immediately following the injury.'" (Id. (quoting

---

[15]Plaintiffs concede that Sandra Covey has not suffered a "serious injury" under any of the other prongs of § 5102(d). (See Pls.' Mem in Opp. at 3).

[16]Citations to "Pls.' Opp. Mem." refer to the Plaintiffs' Memorandum of Law in Opposition to Motion for Summary Judgment as to Sandra Covey, dated May 1, 2006.

Rivera v. United States, 994 F. Supp. 406, 407 (E.D.N.Y. 1998)).

In support of her claim for damages, Ms. Covey submitted declarations from two of her treating physicians, Dr. Stephen Heney and Dr. Richard Sullivan. In his Declaration, Dr. Heney, a chiropractor and Ms. Covey's treating physician, indicates that Ms. Covey "has received physical therapy on average, several times per week, for pain and disability that she began experiencing following the May 2004 accident." (Heney Decl.[17] ¶ 4). He also attached his report, dated April 20, 2006, which he certified to be accurate. (Id. ¶ 5). Dr. Heney diagnosed her with "a severe sprain\strain to both the lumbar and thoracic spines, along with a severe cervical acceleration/deceleration injury. Based on the fact that she blacked out after smashing her head/face in the accident, she was also suffering from minor traumatic brain injury (MTB)." (Id.) His opinion further indicates that he believes she will have pain from the injury "for the rest of her life." (Id.) His report is silent, however, on his medical opinion of how these injuries could limit working or other life activities.

Dr. Sullivan notes in his declaration dated May 1, 2006 ("Sullivan Decl."), that as a result of the accident, plaintiff Sandra Covey suffered a bulging disc at L-3 - L-4, and small osteophytes at the C-5 - C-6 level, "with mild mass effect on the ventral aspect of the thecal sac." (Sullivan Decl. ¶¶ 4-5). His declaration, however, is silent as to whether these injuries could, in his medical opinion, limit Ms. Covey's daily life activities.

Ms. Covey also submitted her own Declaration in response to the Simonton defendants' motion for summary judgment, in which she indicates that, as a result of the accident, she was

---

[17]Citations to "Heney Decl." refer to the Declaration Dr. Stephen P. Heney, dated April 28, 2006, and exhibits thereto.

out of work for one year. (S. Covey Decl.[18] ¶¶ 10-11). She claims that, as a result of her injuries, she could not sit for long periods of time. (Id.)

The Simonton defendants move for summary judgment, arguing that Ms. Covey fails to satisfy the serious injury threshold because she missed only seventy-four (74) days from her job during the first 180 days following the accident. (Simontons' Mem. at 15-17). The Simonton defendants support this assertion with an "Attendance Detail Report" from Sandra Covey's employer that documents sick, vacation, and personal days taken by this plaintiff in the relevant 180 days after the accident. (Simonton Mot.; Ex. P). Specifically, the records demonstrate that during the first four months following the accident, beginning on May 9, 2004 and continuing until September 1, 2004, Ms. Covey only missed 12 days of work. (Id.) Beginning on September 4, 2004, she took a leave of absence that continued through November 5, 2004, the end of the 180 day period, for an additional 62 days. (Id.) Together, the total time that she missed from work during the 180 day period from May 9, 2004 to November 5, 2002 was only 74 days. (Id.)

Moreover, the Simonton defendants note that in her deposition, Sandra Covey testified that the only other restriction on her activity is that she cannot go out dancing or sit through a two-hour movie or four-hour ride in the car without discomfort. (See Simontons' Mem. at 17). Specifically, in her Declaration, Ms. Covey states that in addition to being unable to work after September 1, 2004, she had to stop dancing, which she claims to have done approximately once per week prior to the accident. (S. Covey Decl. ¶ 14). She also claims that she has difficulty

_____

[18]Citations to "S. Covey Decl." refer to the Declaration of Sandra Covey, dated May 1, 2006.

sitting through movies, sitting for a four-hour car ride that she would take approximately once each month, and that she experienced problems sleeping. (Id. ¶ 14; S. Covey Dep. 98:9-19). The only specific claims about any limitation of daily activities presented by Ms. Covey beyond these general complaints is her claimed inability to work for one year, beginning four months after the accident. (Pls.' Opp. Mem. 5).

In Abrahamson v. Primer Car Rental, 261 A.D.2d 562, 691 N.Y.S.2d 83 (2d Dep't 1999), defendants demonstrated that the plaintiff was out of work for only 73 days during the first 180 days following an accident. In the absence of adequate evidence submitted by the plaintiff to rebut this fact, the court in Abrahamson held that the subsection of Insurance Law § 5102(d) dealing with the 90-180 Day Rule had not been satisfied. See also Williams v. Ritchie, 139 F. Supp. 2d 330, 342 (E.D.N.Y. 2001) (noting that the 90 day requirement set forth in § 5102(d) is "strictly construed"). But see Donagher v. Airways Moving & Storage, Inc., No. 05 CV 6616, 2006 WL 1910741, at *3 (S.D.N.Y. July 10, 2006) (denying summary judgment where plaintiff returned to work after two weeks, but was unable to perform essential functions, such as lifting groceries, and where his ability to partake in long enjoyed recreational activities was ended indefinitely); Williams v. Elzy, No. 00 CV 5382, 2003 WL 22208349, at *9-10 (S.D.N.Y. Sept. 23, 2003) (finding a triable issue of fact where plaintiff testified that she had missed three months of work in the six months following the accident and noting that in "most cases where courts have found the plaintiff was not prevented from performing activities of daily living, the plaintiff had generally missed less than a month of work and there was no evidence that 'substantially all' of plaintiff's daily activities were limited. . .") (citing cases).

Here, plaintiff has presented no evidence to suggest that she has been prevented from

performing the basic activities of daily living, other than being unable to go dancing once a week, and having difficulty sitting through movies and occasional long car rides. In addressing claims of significant limitation based in part on recreational activity, such as sports and exercise, some courts have unambiguously held that the inability to participate in recreational activities does not qualify as a serious injury. See, e.g., Rookwood v. Valdez, No. 99 CV 10285, 2001 WL 776939, *5 (S.D.N.Y. July 11, 2001) (noting that the portions of plaintiff's claim relating to her inability to play volleyball or ride a bicycle do not qualify for the purposes of claiming a serious injury); Cooper v. Dunn, No. 99 CV 6903, 2001 WL 138864, at *11 (E.D.N.Y. Jan. 2, 2001) (noting that "substantially all" means being unable to perform usual daily activities to a great extent, and that plaintiff's inability to play a pick-up game of basketball or do push ups are "simply not losses for which recovery is permitted"). One judge in Queens Civil Court, however, has found that an inability to partake in recreational activities may qualify where plaintiff has made more than "generalized statements" about missed activities, and has instead submitted detailed information describing exercise performed with "great regularity." Bonilla v. Bromfield, 2002 WL 1291893, *2-3 (N.Y. City Civ. Ct. 2002); see also Panchmia v. Tauber, 3 Misc.3d 849, 854, 775 N.Y.S.2d 490, 494-95 (N.Y. City Civ. Ct. 2004). In this case, however, the generalized statements of Sandra Covey about missing occasional dancing and other recreational activities do not indicate that they were customary daily activities and she has not indicated any other significant limitations on her daily activities.

Having reviewed the doctors' declarations and the testimony and declaration of Sandra Covey, the Court concludes that she has failed to rebut the Simonton defendants' evidence demonstrating that she did not suffer a "serious injury" as that term is defined under New York

law. She has not presented evidence to sustain her burden of showing that she suffered a significant limitation and indeed, it is unclear that she has even presented sufficient evidence of a "medically determined injury," which is an element of proof required under the 90-180 day Rule.[19] Regardless, the evidence is clear that Ms. Covey at best only missed 74 days out of the first 180 days following the accident. Strictly construed, the statute requires a showing that she was unable to perform her usual and customary daily activities "for not less than" 90 days. N.Y. Ins. Law § 5102(d) (emphasis supplied). Ms. Sandra Covey's testimony and Declaration, even though somewhat inconsistent,[20] when viewed in conjunction with the records from her employer, establish that she was only out of work for 74 out of the first 180 days following the accident, and that other limitations on her activities, such as occasional dancing, or discomfort while viewing movies or riding for long periods in a car, are insufficient to qualify as a limitation on her usual daily life activities.

Therefore, it is respectfully recommended that the Simonton defendants' motion for summary judgment dismissing Sandra Covey's claims for failure to satisfy the serious injury

---

[19]Although plaintiff contends that there is no need to present any expert medical witness to establish this element (see Pls.' Opp. Mem. at 4), the Court does not reach this question because it is clear from the evidence that plaintiff fails to establish that she was incapacitated during 90 out of the first 180 day period following the injury.

[20]The Simonton defendants draw attention to discrepancies between Sandra Covey's deposition testimony and her declaration. (Simonton Reply Mem. at 5-7). They specifically note that in her deposition testimony she stated that she missed only "'the week . . . right after the accident'" yet in her declaration she asserted that "'during the first month after the accident they put me out on short-term disability.'" (Id. at 5-7, quoting S. Covey Decl. ¶ 10, S. Covey Deposition). The Court has examined the records provided by Sandra Covey's employer, attached by the Simonton defendants as Exhibit P, and found them to be unambiguous and in keeping with Sandra Covey's deposition testimony. Accordingly, this Court has determined, even when drawing inferences in favor of plaintiff, that Sandra Covey has failed to meet the 90/180 day requirement of the statute.

threshold be granted.

## CONCLUSION

For the aforementioned reasons, it is respectfully recommended that the Simonton defendants' motion for summary judgment dismissing Sandra Covey's claims be granted, but that their motion for summary judgment as to liability as to Lindsay Covey's claims be denied. It is further respectfully recommended that plaintiffs' motion for summary judgment and defendant Pahountis' motion for summary judgment be denied.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      March 16, 2007

Cheryl L. Pollak
United States Magistrate Judge